UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
:
RICHARD FARMER, :
:
Plaintiff, :   17-CV-9300 (GBD) (OTW)
:
-against- :   **REPORT & RECOMMENDATION**
:
FZOAD.COM ENTERPRISES INC., et al., :
:
Defendants. :
:
------------------------------------------------------------x

**ONA T. WANG, United States Magistrate Judge:**

**TO THE HONORABLE GEORGE B. DANIELS, United States District Judge,**

Defendants Mukund Matani,[1] Dental Associates of New York, LLP, Gary Greenwald, and Greenwald & Matani PTR ("Matani Defendants") and Defendants Fzoad.com Enterprises, Inc. d/b/a/ Manhattan Eyeworks d/b/a Chelsea Vision Associates and David Forest Gross ("Employer Defendants") both bring motions to vacate the default entered against them on July 30, 2018. (ECF 36, 49). Plaintiff, proceeding *pro se*, obtained a default judgment against all Defendants in this matter after they failed to respond to Plaintiff's Complaint. For the reasons below, the Court recommends that the default judgment be **VACATED** as to both groups of Defendants.

---

[1] Defendant Matani's counsel notes that the Complaint incorrectly spells Dr. Matani's first name as "Munkund" instead of "Mukund." (ECF 56 at 1).

I. **Background**

    a. **Factual History**

Plaintiff Richard Farmer ("Plaintiff") filed the underlying action on November 27, 2017 against Defendants for a variety of claims, including, *inter alia*, alleged violations of the Fair Labor Standards Act ("FLSA"), New York Labor Law ("NYLL"), Title VII, and the Americans with Disabilities Act ("ADA"). (ECF 2). As a result, Plaintiff seeks actual damages, statutory damages, punitive damages, and costs. *Id.* at 24-25.

        i. Plaintiff's FLSA and NYLL Claims[2]

Plaintiff worked as a salesman, and then as a manager, for Defendant Fzoad.com Enterprises, Inc. d/b/a Manhattan Eyeworks ("Manhattan Eyeworks") from August 2014 to April 27, 2015. Complaint ("Compl.") (ECF 2) ¶ 62. Throughout that time, Plaintiff alleges that he worked over seventy hours a week but was never paid overtime. Compl. ¶ 70. Additionally, Plaintiff alleges that he and his co-workers were not provided a sufficient meal period. Compl. ¶ 133. Although Plaintiff repeatedly confronted Manhattan Eyeworks's owner, Defendant David Gross, about the pay discrepancy, Mr. Gross refused to make the additional payments, allegedly claiming that he lacked the funds to pay Plaintiff. Compl. ¶¶ 74-75. According to Plaintiff, Mr. Gross then terminated Plaintiff's employment because of Plaintiff's repeated complaints concerning unpaid overtime. Compl. ¶ 137.

---

[2] Although his job title was "manager," Plaintiff argues that he is not an exempt employee under the FLSA and NYLL due to not performing managerial functions. Compl. ¶¶ 66-68.

2

ii. <u>Plaintiff's Discrimination Claims</u>

Manhattan Eyeworks shared office space with its sub-lessor Defendant Dental Associates of New York ("Dental Associates"). Compl. ¶ 33. When Plaintiff was promoted to manager in September 2014, Dr. Mukund Matani, owner of Dental Associates, and his staff allegedly expressed disappointment that Manhattan Eyeworks did not hire a female manager. Compl. ¶ 25. Plaintiff alleges that Dr. Matani and his staff subsequently took measures to harass Manhattan Eyeworks, *e.g.*, tampering with the temperature controls, in the hopes of pressuring them to replace Plaintiff with a female manager. Compl. ¶¶ 52, 54-56. According to Plaintiff, Dr. Matani ultimately used his leverage as Manhattan Eyeworks's sub-lessor to convince Mr. Gross to fire Plaintiff and replace him with a female manager. Compl. ¶ 28. Plaintiff also alleges that his termination constitutes age discrimination because he was replaced by a younger employee who had less experience than he had. Compl. ¶ 94.

In addition to age and sex discrimination, Plaintiff claims that his termination was retaliatory in response to his raising workplace harassment claims to Mr. Gross on behalf of a co-worker. Compl. ¶ 94. Plaintiff alleges that Dr. Matani made inappropriate physical contact with an employee of Manhattan Eyeworks. Compl. ¶ 80. Plaintiff further alleges that Dr. Matani's receptionist made derogatory remarks toward this employee regarding her race. Compl. ¶¶ 86-87. In response, Plaintiff reported the incidents to Mr. Gross and encouraged his co-workers to likewise report any harassment issues by Dr. Matani's staff. Compl. ¶¶ 88-89. Mr. Gross allegedly grew frustrated with Plaintiff's harassment complaints and terminated him in retaliation. Compl. ¶ 96.

iii. Plaintiff's Conversion Claim

Plaintiff further seeks recovery of his personal possessions, including clothes and three laptops, that allegedly were not returned to him by Manhattan Eyeworks following termination of his employment. Compl. ¶¶ 148-152. Plaintiff claims that Manhattan Eyeworks refused to return his property in retaliation for Plaintiff's employment and harassment complaints. Compl. ¶ 148.

b. **Procedural History**

The Matani Defendants were served with the Summons and Complaint on May 23, 2018 while the Employer Defendants were served on May 25, 2018. (ECF 17-22). Upon Defendants' failure to respond to the Complaint, the Clerk entered defaults against Defendants on July 26, 2018. (ECF 25-30). Plaintiff subsequently moved for default judgment, which resulted in Judge Daniels issuing an order of default judgment against Defendants on July 30, 2018. (ECF 34).

The matter was subsequently referred to me for an inquest. (ECF 33). On November 2, 2018, I issued an order setting a briefing schedule for the parties to file inquest papers. (ECF 35). That same day, the Matani Defendants filed a motion to vacate the default judgment. (ECF 36). I subsequently issued a stay on the inquest pending resolution of the motion to vacate. (ECF 42). The Employer Defendants filed their own motion to vacate on November 19, 2018. (ECF 49). On May 23, 2019, I heard oral argument from the parties on their respective motions to vacate.

## II. Discussion

### a. Legal Standard

Default judgments may be vacated under Federal Rule of Civil Procedure 60(b) for (i) "mistake, inadvertence, surprise, or excusable neglect"; (ii) "newly discovered evidence"; (iii) fraud, (iv) a void judgment, (v) a satisfied or discharged judgment, or (vi) other reasons that merit relief. Motions to vacate default judgments "are to be granted liberally" in light of the fact that default judgments are "disfavored in the Second Circuit." *Global Gold Mining, LLC v. Ayvazian*, 983 F.Supp.2d 378, 383-84 (S.D.N.Y. 2013); *see also Cody v. Mello*, 59 F.3d 13, 15 (2d Cir. 1995) (noting Second Circuit's "preference that litigation disputes be resolved on the merits, not by default"); *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993) ("defaults are generally disfavored and are reserved for rare occasions").

When determining whether a motion to vacate should be granted, the Court must consider three factors: (1) whether the default was willful, (2) whether the defendants have a meritorious defense, and (3) what prejudice would be incurred by the plaintiff in the event of a vacatur. *Peterson v. Syracuse Police Dep't*, 467 Fed. Appx. 31, 33 (2d Cir. 2012) (applying the three factors to Rule 55(c) good cause determination); *New York v. Green*, 420 F.3d 99, 108 (2d Cir. 2005) (applying the three factors to Rule 60(b) determination).

### b. Matani Defendants

#### i. The Matani Defendants' Default Was Not Willful.

In light of the preference for adjudication of a case on the merits, Plaintiff must show a willful default and not merely an excusable default. *American Alliance Ins. Co., Ltd. v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d Cir. 1996). This requires more than "mere negligence," but must be

5

satisfied through evidence of "egregious or deliberate conduct." *Green*, 420 F.3d at 108. "'[E]xcusable neglect' is to be construed generously in the context of an attempt to vacate a default judgment." *American Alliance*, 92 F.3d at 58.

Dr. Matani's failure to answer clearly falls within the realm of excusable neglect. Dr. Matani was diagnosed with a "likely metastatic disease" in late June-early July 2018. Declaration of Alexander H. Gardner ("Gardner Decl.") (ECF 56) ¶ 7; Declaration of Nishat Mehta in Further Support of Defendants' Motion to Vacate ("Mehta Decl.") (ECF 66) ¶ 3 and Ex. A. In the month leading up to the diagnosis, and during the time in which he was served, Dr. Matani had already reported feeling unwell. Mehta Decl. ¶ 3. Dr. Matani's health deteriorated quickly, and he entered hospice care on August 12, 2018. Gardner Decl., Ex. B. Dr. Matani died shortly after, on September 23, 2018. Gardner Decl., Ex. A. It is therefore understandable that instead of timely responding to Plaintiff's complaint in late June, Dr. Matani's focus was on his declining health.

Plaintiff's unsupported retort that Dr. Matani's cancer was an "elaborate ruse" to avoid responding to Plaintiff's lawsuit is not well taken. (*See* ECF 58 at 4). Even if Dr. Matani had been diagnosed with a form of cancer as early as 2014, as Plaintiff alleges, that is irrelevant to whether Dr. Matani's health in <u>2018</u> interfered with his ability to respond to the complaint. Furthermore, Plaintiff's argument that Dr. Matani was not battling cancer because he ultimately died of cardiopulmonary arrest misconstrues the evidence. Dr. Matani's death certificate lists cardiopulmonary arrest as the cause of death "due to or as a consequence of . . .

6

metastatic carcinoma." Gardner Decl., Ex A. As a result, I do not find that Dr. Matani's default was willful or in bad faith.[3]

Because Dr. Matani was the sole owner of Dental Associates and Greenwald & Matani PTR, Dr. Matani would have been the individual responsible for responding to Plaintiff's complaint on their behalf. *See* Gardner Decl. ¶ 6. Accordingly, those two entities' defaults are likewise not willful for the reasons described above.

Dr. Greenwald is not deceased, but he had already ceded his ownership share of Dental Associates and Greenwald & Matani PTR to Dr. Matani before Plaintiff even started employment with Manhattan Eyeworks. (ECF 57 at 2).[4] It is therefore understandable that Dr. Greenwald would have deferred response to any suit against Dental Associates and Greenwald & Matani PTR to Dr. Matani. Plaintiff, in turn, argues that Dr. Greenwald's maintenance of his dental license during Plaintiff's time of employment and the continuation of the Greenwald & Matani PTR entity provides proof that Dr. Greenwald was still involved in the dental office post-retirement. (ECF 58 ¶¶ 10-13). Plaintiff, however, does not allege any facts in his complaint showing that Dr. Greenwald was personally involved in any of the facts giving rise to Plaintiff's claim. The only allegation regarding Dr. Greenwald was that he collected rent from Manhattan Eyeworks and despite being retired, was aware of his employee's "hostile" nature. Compl. ¶ 31. While it would be inadvisable for Dr. Greenwald to ignore a suit that personally named him as a defendant, his deference to Dr. Matani for a complaint that specifically centers around Dr.

---

[3] Plaintiff himself appears to admit that Dr. Matani's cancer diagnosis was "good reason" for failing to respond. (ECF 59 at 8).
[4] For this assertion, the Matani Defendants only cite to the Declaration of Alexander H. Gardner, who does not appear to have personal knowledge of this fact. Nevertheless, Plaintiff admits that Dr. Greenwald had been "retired" during Plaintiff's employment and was "off site." Compl. ¶ 31.

Matani's actions after Dr. Greenwald had already ceased involvement in the dental office's operations amounts to, at most, negligent rather than willful behavior.

ii. <u>The Matani Defendants Have a Meritorious Defense.</u>

To show a meritorious defense, a defendant need not prove that the defense will prevail at trial but must show that if supported by evidence would present a "complete defense." *Green*, 420 F.3d at 109. While conclusory assertions of denial are insufficient, a defendant may seek to vacate a default by "articulat[ing] a defense" that "raises a 'serious question'" as to Plaintiff's claims. *Sea Hope Navigation Inc. v. Novel Commodities SA*, 978 F.Supp.2d 333, 339 (S.D.N.Y. 2013) (quoting *Salomon v. 1498 Third Realty Corp.*, 148 F.R.D. 127, 130 (S.D.N.Y. 1993)). It is enough for a defendant's defenses to raise "even a hint of a suggestion" of a complete defense. *Sea Hope*, 978 F.Supp.2d at 339 (internal quotations omitted) (quoting *Weisel v. Pischel*, 197 F.R.D. 231, 239 (E.D.N.Y. 2000)); *see also MD Produce Corp. v. 231 Food Corp.*, 304 F.R.D. 107, 110 (E.D.N.Y. 2014) (describing meritorious defense factor as "low threshold").

The Matani Defendants raise two potential defenses to Plaintiff's claims: (1) none of the Matani Defendants employed Plaintiff and (2) Plaintiff failed to exhaust his administrative remedies by timely filing a charge with the U.S. Equal Employment Opportunity Commission ("EEOC"). (ECF 57 at 5-6). Plaintiff admits that he was never employed by the Matani Defendants but rather rests his FLSA and discrimination claims on his allegation that Dr. Matani "exercise[d] much influence" over Plaintiff's employer, Manhattan Eyeworks, as its sub-lessor. (ECF 59 at 12). For discrimination claims, an employer-employee relationship is a "primary element." *Gulino v. New York State Educ. Dep't*, 460 F.3d 361, 370 (2d Cir. 2006) (rejecting

8

expansion of Title VII liability to include non-employers); *see also Swallows v. Barnes & Noble Book Stores Inc.*, 128 F.3d 990, 993 (6th Cir. 1997) (pointing to statutory language in ADEA and ADA requiring that the defendant be considered an "employer" of the plaintiff); *Felder v. United States Tennis Ass'n Inc.*, No. 17-CV-5045 (ER), 2018 WL 5621484, at *4 (S.D.N.Y. Oct. 30, 2018) (noting that courts have applied same "employer" test to the various employment discrimination laws). Plaintiff's attempt to claim liability based on mere interference by a third-party has been extremely limited by the Second Circuit and only applies where the third-party had been delegated some form of "core employer responsibility," which Plaintiff does not allege here. *See Gulino,* 460 F.3d at 378.

The Matani Defendants further assert that Plaintiff failed to timely file a charge with the EEOC prior to filing this action. (ECF 57 at 6-7). Aggrieved employees, such as Plaintiff, seeking to bring Title VII and ADEA claims[5] must first timely[6] file charges with the EEOC before they can bring suit in federal court. *McPherson v. New York City Dep't of Educ.*, 457 F.3d 211, 213 (2d Cir. 2006). Taking the most recent act that could have given Plaintiff a legal claim against Defendants, Plaintiff's alleged termination date of April 28, 2015, would require Plaintiff to have filed his EEOC charge by February 22, 2016. *See* Compl. ¶ 96. Plaintiff admits in one of his filings that he filed his EEOC charge on February 24, 2016. (ECF 81). Therefore, if this action were to proceed through discovery and Plaintiff's EEOC documents were to support these dates, the Matani Defendants would have yet another basis for a complete defense against

---

[5] This equally applies to Plaintiff's undefined ADA claim. *See* 42 U.S.C. § 12117(b); *Agosta v. Suffolk County*, 981 F.Supp.2d 167, 172 (E.D.N.Y. 2013) ("A district court only has jurisdiction to hear claims brought pursuant to the ADA that are either contained in the EEOC charge or that are 'reasonably related' to the claims in the EEOC charge").
[6] Here, 300 days "after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1).

Plaintiff's claims. Accordingly, the meritorious defense factor weighs in favor of vacating the default judgment against the Matani Defendants.

### iii. Plaintiff Would Not be Prejudiced.

Although "delay alone is not a sufficient basis for establishing prejudice," delay may weigh against vacating a default where the passage of time has resulted in "the loss of evidence, create[s] increased difficulties of discovery, or provide[s] greater opportunity for fraud and collusion." *Davis v. Musler*, 713 F.2d 907, 916 (2d Cir. 1983). The Matani Defendants barely address this point, only arguing that delay alone is insufficient to find prejudice. (ECF 57 at 5). In response, Plaintiff argues that he would be prejudiced by the delay due to the subsequent death of Dr. Matani and the inability to depose fellow employees who have since been terminated from their employment. (ECF 59 at 9-10).[7]

As a preliminary matter, it is doubtful whether Plaintiff would have been able to depose Dr. Matani even if Dr. Matani had timely responded to the complaint. Dr. Matani's health was already deteriorating, and he entered hospice care a little more than a month after his answer was due. Gardner Decl., Ex. B. Although Plaintiff may not be able to depose Dr. Matani regarding his relationship with female employees, Plaintiff specifically named those employees in his complaint and provides no reason why he would not able to depose them regarding those same interactions.

Plaintiff's argument regarding employee witnesses could present problems for Plaintiff if those witnesses are no longer available following their termination from their job with

---

[7] Plaintiff also mentions that emails were deleted the day after he was terminated. (ECF 60 ¶ 24). This could, if true, support a spoliation motion later in the case, but does not weigh towards finding prejudice since the emails would allegedly have been deleted anyway by the time Defendants' Answer was due, three years later.

Defendants, *e.g.,* unwillingness to cooperate or relocation out of the country. Plaintiff does not assert, however, that the witnesses are in any way unavailable. Indeed, Plaintiff chooses in his sur-reply to focus only on the absence of Dr. Matani as a witness rather than any other witnesses. (ECF 72 at 5). Accordingly, because "all doubts should be resolved in favor of those seeking relief" from default judgment, I find that any prejudice against Plaintiff would be insubstantial. *See Davis*, 713 F.2d at 915.

### c. Employer Defendants

In addition to the prejudice factor weighing in the Employer Defendants' favor, as described above, the Employer Defendants have sufficiently shown that their default was not willful and that they have a meritorious defense.

#### i. The Employer Defendants' Default Was Not Willful.

Mistake can form sufficient grounds to vacate a default judgment. Fed. R. Civ. P. 60(b)(1). The Employer Defendants allege they were advised that Plaintiff was incarcerated at the time of the complaint's filing, incorrectly assuming that this stayed any litigation until his release. (ECF 50 at 3). *See Brien v. Kullman Indus., Inc.*, 71 F.3d 1073, 1077 (2d Cir. 1995) (reversing district court's finding of willful default where defendant incorrectly assumed answer was not due pending removal decision); *U.S. v. Alongi*, 346 F.Supp.2d 394, 395 (E.D.N.Y. 2004) (finding no willful default where defendant given wrong advice from law firm); *but see Atchison, Topeka & Santa Fe Ry. Co. v. Matchmaker, Inc.*, 107 F.R.D. 63, 65 (D. Colo. 1985) ("It is well-established that failure to seek advice of counsel does not constitute excusable neglect."). When the Employer Defendants received a copy of the inquest briefing schedule, thereby

notifying them that the case was indeed proceeding, they promptly retained counsel and filed a motion to vacate default.[8] (ECF 69 at 2-3).

Plaintiff contends that the Employer Defendants were "sophisticated business people" and at oral argument, alleged that Mr. Gross had prior experience with a lawsuit in state court. (*See* ECF 59 at 8). While participating in litigation should alert one to the wisdom of monitoring Court filings, there is no evidence in the record in this matter that the Employer Defendants made a strategic decision to not respond to Plaintiff's complaint. *Cf. Action S.A. v. Marc Rich & Co., Inc.*, 951 F.2d 504, 507 (2d Cir. 1991) (finding willful default where defendant admitted he failed to respond due to fear of a potential criminal indictment); *Elsevier, Inc. v. Grossman*, No. 12-CV-5121 (KPF), 2013 WL 6331839, at *4-5 (S.D.N.Y. Dec. 5, 2013) (finding willful default where defendants instructed counsel to ignore case because it was less important than concurrent litigation elsewhere). Accordingly, in the absence of "egregious or deliberate conduct" *Green*, 420 F.3d at 108, and because any "doubts 'should be resolved in favor of the defaulting party,'" *Powerserve Intern., Inc. v. Lavi*, 239 F.3d 508, 514 (2d Cir. 2001), I find that the Employer Defendants' mistaken assumption does not rise to the requisite level of a willful default and weighs toward vacating the default.

    ii.   <u>The Employer Defendants Have a Meritorious Defense.</u>

In addition to the exhaustion of EEOC remedies, as discussed above, the Employer Defendants additionally offer the defenses that Plaintiff did not work the overtime hours he claims and that Plaintiff was exempt from the FLSA's and NYLL's requirements. Defendants'

---

[8] Although the inquest briefing order was served on Defendants, per the Court's order, ECF 35, it is unclear from the docket whether Defendants were ever served with a copy of the initial Default Judgment order.

counsel asserted at oral argument that Plaintiff's salary and administrative duties made him an exempt employee. If proven through discovery, this would raise a complete defense for the Employer Defendants in regards to the FLSA and NYLL wage and hour claims. As a result, this factor also weighs in favor of vacating default.

### III.    Conclusion

Because I find that the Matani Defendants and the Employer Defendants have both demonstrated that their defaults were not willful, that they have meritorious defenses, and that Plaintiff would not suffer substantial prejudice from the delay, I recommend that the default judgments entered against both the Matani Defendants and Employment Defendants be vacated.

### IV.    Objections

In accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days (including weekends and holidays) from receipt of this Report to file written objections. *See also* Fed. R. Civ. P. 6 (allowing three (3) additional days for service by mail). A party may respond to any objections within fourteen (14) days after being served. The *pro se* Plaintiff's objections shall be filed with the Clerk of Court, *Pro Se* Intake Unit, United States Courthouse, 500 Pearl Street, Room 200, New York, New York 10007. Such objections, and any responses to objections, shall be addressed to the Honorable George B. Daniels, United States District Judge. Any requests for an extension of time for filing objections must be directed to Judge Daniels.

**FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS <u>WILL</u> RESULT IN A WAIVER OF OBJECTIONS AND <u>WILL</u> PRECLUDE APPELLATE REVIEW.** *See Thomas v. Arn*, 474 U.S. 140,

155 (1985); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298, 300 (2d Cir. 1992); *Wesolek v. Canadair Ltd.*, 838 F.2d 55, 58 (2d Cir. 1988); *McCarthy v. Manson*, 714 F.2d 234, 237-38 (2d Cir. 1983). If Plaintiff wishes to review, but does not have access to, unpublished cases cited herein that are reported on Westlaw, he should request copies from the Defendants. *See Lebron v. Sanders*, 557 F.3d 76, 79 (2d Cir. 2009).

The Clerk is directed to mail a copy of this report & recommendation to Plaintiff at the address listed on the docket.

Respectfully submitted,

*s/ Ona T. Wang*

Dated: June 13, 2019 **Ona T. Wang**
New York, New York United States Magistrate Judge